# In the United States Court of Federal Claims

|  |  |
|---|---|
| MATEEGA, PHILIP, ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 22-634C |
| v. ) | (Filed: October 25, 2022) |
| ) | |
| THE UNITED STATES OF AMERICA, ) | |
| ) | |
| Defendant. ) | |

*Philip Mateega*, Pro Se, Kampala, Uganda.

*Jana Moses*, U.S. Department of Justice, Civil Division, Commercial Litigation Branch, Washington, DC, with whom were *Brian M. Boynton*, Principal Deputy Assistant Attorney General, *Patricia M. McCarthy*, and *Reginald T. Blades, Jr.*, Assistant Director, for Defendant.

**OPINION AND ORDER**

**KAPLAN, Chief Judge.**

Plaintiff Philip Mateega, proceeding pro se, alleges that the United States government owes him pay based on his work as a security guard in Iraq from 2008 to 2009. See Compl., Docket No. 1. While the complaint is difficult to follow, its gravamen is that Mr. Mateega was entitled to receive the wages of a civilian employee of the federal government hired at the GS-12 level.[1] Instead, he was paid seventy dollars per day pursuant to a so-called "Independent Contractor Agreement" with Triple Canopy Operations, Inc., a government contractor. Id. at 4.

---

[1] See id. The base pay of a Step 1 GS-12 employee in 2008 amounted to an hourly rate of about $27.65. See Federal Pay, GS-12 Pay Scale – General Schedule 2008, https://www.federalpay.org/gs/2008/GS-12.

Mr. Mateega alleges that his agreement with Triple Canopy "had no standing except one of fraud or illegality." Id. He further alleges that his cause of action in this case "is rooted in criminal violations by [the United States] prohibited and punishable pursuant to the relevant provisions of the Military Extraterritorial Jurisdiction Act," 18 U.S.C § 3261 ("MEJA"). Id. at 1. Those criminal violations, he says, involve "the taking of property—money, and or stealing of wages." Id. He requests an award of $53,400.00 in damages to compensate him for unpaid wages for dates in 2008 and 2009. Id. at 5.

Mr. Mateega filed a request to proceed in forma pauperis, Docket No. 2, as well as an "updated" application to do so, Docket No. 6. The latter application is identical to the initial one except as to the date of signing. To proceed in forma pauperis, a plaintiff must submit an affidavit that includes a statement of his assets, a declaration that he is unable to pay the fees or give the security for an attorney, and a statement of the nature of his action and his belief that he is entitled to judgment. 28 U.S.C. § 1915(a)(1). Here, Plaintiff satisfied these requirements. The Court therefore **GRANTS** his application to proceed in forma pauperis, Docket No. 2. It **DENIES** his updated motion, Docket No. 6, as moot.

The government has moved to dismiss the complaint pursuant to Rule 12(b)(1) of the Rules of the Court of Federal Claims ("RCFC"). It argues that this Court has no jurisdiction to enforce criminal laws and that, in any event, even if Mr. Mateega's claim was construed as one based on breach of contract by the government, it would be barred by the statute of limitations prescribed by 28 U.S.C. § 2501. See Def.'s Mot. to Dismiss at 3, Docket No. 10. The Court agrees with the government.

In considering a motion to dismiss for lack of subject-matter jurisdiction, the Court accepts all undisputed facts as true and "draw[s] all reasonable inferences in favor of the

plaintiff." Trusted Integration, Inc. v. United States, 659 F.3d 1159, 1163 (Fed. Cir. 2011). The Court also considers exhibits attached to the pleadings and matters of which it may take judicial notice. Rocky Mountain Helium, LLC v. United States, 841 F.3d 1320, 1325 (Fed. Cir. 2016) (citing RCFC 10(c)). Plaintiffs proceeding pro se, lacking the benefit of counsel in preparing their claims, receive a degree of latitude in their pleadings not afforded parties represented by counsel. See Estelle v. Gamble, 429 U.S. 97, 106 (1976); Haines v. Kerner, 404 U.S. 519, 520 (1972) (noting that the pleadings of pro se plaintiffs are held to "less stringent standards than formal pleadings drafted by lawyers"). Nevertheless, pro se plaintiffs must meet the burden of establishing that the Court has subject-matter jurisdiction. See Trusted Integration, 659 F.3d at 1163. If the Court finds that no jurisdiction exists, it must order dismissal without proceeding further. See Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 94–95 (1998); RCFC 12(h)(3).

The Court of Federal Claims has jurisdiction under the Tucker Act to hear "any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort." 28 U.S.C. § 1491(a)(1). While the Tucker Act waives the sovereign immunity of the United States to allow a suit for money damages, United States v. Mitchell, 463 U.S. 206, 212 (1983), it does not confer any substantive rights, United States v. Testan, 424 U.S. 392, 398 (1976). Plaintiffs invoking the court's jurisdiction must therefore identify an alternative source of a substantive right to money damages arising out of a contract, statute, regulation, or constitutional provision. See Jan's Helicopter Serv., Inc. v. Fed. Aviation Admin., 525 F.3d 1299, 1306 (Fed. Cir. 2008).

Furthermore, the Tucker Act's waiver of sovereign immunity is subject to 28 U.S.C. § 2501, which states that "[e]very claim of which the United States Court of Federal Claims has

jurisdiction shall be barred unless the petition thereon is filed within six years after such claim first accrues." Id.; see also Hopland Band of Pomo Indians v. United States, 855 F.2d 1573, 1576–77 (Fed. Cir. 1988) (noting that the statute of limitations "is a jurisdictional requirement attached by Congress as a condition of the government's waiver of sovereign immunity and, as such, must be strictly construed."). In general, a cause of action under the Tucker Act "accrues as soon as all events have occurred that are necessary to enable the plaintiff to bring suit, i.e., when 'all events have occurred to fix the Government's alleged liability, entitling the claimant to demand payment and sue here for his money.'" Martinez v. United States, 333 F.3d 1295, 1303 (Fed. Cir. 2003) (en banc) (quoting Nager Elec. Co. v. United States, 177 Ct. Cl. 234, 240 (1966)). In other words, a claim accrues when the plaintiff becomes aware "of the existence of his injury and the acts giving rise to his claims." Martinez, 333 F.3d at 1219; see also Lynch v. United States, 135 Fed. Cl. 494, 501 (2017) (dismissing claim that accrued nineteen years prior absent evidence indicating accrual should have been suspended for any period of time).

In his complaint, Mr. Mateega contends that his cause of action against the United States is "grounded in the Military Extraterritorial Jurisdiction Act," Compl. at 2 (citing 18 U.S.C. §§ 661, 3261) and "rooted in criminal violations by Defendant," id. at 1. The Court of Federal Claims, however, lacks jurisdiction over the violations of criminal law. See Joshua v. United States, 17 F.3d 378, 379 (Fed. Cir. 1994) ("The court [of Federal Claims] has no jurisdiction to adjudicate any claims whatsoever under the federal criminal code"); Kania v. United States, 227 Ct. Cl. 458, 465–66 (1981) (finding the Court had no jurisdiction over a dispute regarding an immunity agreement between the government and an informant).

Further, MEJA has no application to this case. It permits the government to prosecute crimes committed outside the United States by members of the Armed Forces and by persons

4

employed by or accompanying the Armed Forces; it does not authorize private actions against the United States itself. See, e.g., United States v. Williams, 836 F.3d 1, 5 (D.C. Cir. 2016) (discussing prosecution of soldier for acts occurring in Germany); United States v. Green, 654 F.3d 637, 641 (6th Cir. 2011) (MEJA "extends federal criminal jurisdiction to persons who commit criminal acts while a member of the Armed Forces but later cease to be subject to military jurisdiction.").

Finally, assuming that the Court were to construe Mr. Mateega's allegations against the United States as raising claims based on breach of contract or the violation of a money-mandating statute or regulation, such claims would be barred by the statute of limitations. Mr. Mateega worked as a security guard from April 4, 2008, to September 23, 2009. See Compl. at 5. The "Government's liability" was therefore "fixed" in September 2009, at the latest. See Nager Elec. Co., 177 Ct. Cl. at 240. The present suit was filed in June 2022, well beyond the six-year statute of limitations. While the accrual of a cause of action may be suspended in certain limited circumstances—namely, where the defendant concealed its acts or the injury was unknowable at the accrual date, see Martinez, 333 F.3d at 1319; Welcker v. United States, 752 F.2d 1577, 1580 (Fed. Cir. 1985)—Mr. Mateega alleged no such concealment or unawareness here, see Young v. United States, 529 F.3d 1380, 1385 (Fed. Cir. 2008) (declining to suspend accrual where the Plaintiff knew all the facts giving rise to the action and made no suggestion that the Army concealed any relevant facts); Lynch, 135 Fed. Cl. at 501 (finding no accrual where the Plaintiff failed to allege any affirmative acts on the part of the Coast Guard that could be considered concealment). Therefore, 28 U.S.C. § 2501 bars his claims.

## CONCLUSION

For the foregoing reasons, the Government's motion to dismiss Mr. Mateega's complaint, Docket No. 10, is **GRANTED**, and the case is **DISMISSED without prejudice**. Plaintiff's motion to strike certain aspects of the Government's motion to dismiss, Docket No. 12, is **DENIED**. His motion to proceed in forma pauperis, Docket No. 2, is **GRANTED**, and his updated motion, Docket No 6 is **DENIED** as moot. The Clerk shall enter judgment accordingly.

**IT IS SO ORDERED.**

*/s/ Elaine Kaplan*

ELAINE D. KAPLAN

Chief Judge